Case 1:20-cv-00016 Document 29 Filed on 07/27/20 in TXSD Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
July 27, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT § | |
| OF BRAVA CRUZ, L.L.C., owner of the § | |
| M/V "BRAVA CRUZ" Official No. 663950 § | |
| ZIMCO MARINE, L.L.C., and § | CIVIL ACTION NO. 1:20-CV-16 |
| TEXGULMARCO COMPANY, INC. § | |
| for EXONERATION FROM OR § | |
| LIMITATION OF LIABILITY § | |

## **OPINION AND ORDER**

Claimant Abelardo Torres injured his finger while aboard the shrimping vessel Brava Cruz ("The Vessel"). In a Texas state court, he sued the Vessel owner (Brava Cruz, L.L.C.) and related entities (Zimco Marine, L.L.C. and Texgulmarco Company, Inc.) for personal injuries. The three companies then filed this lawsuit under the Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*, seeking to limit their liability to the value of the Vessel and its pending freight. (Complaint, Doc. 1; Ad Interim Stipulation for Value, Doc. 2)

Torres now moves to dismiss Petitioners' Complaint on the grounds that they did not file the limitation action within six months after receiving written notice of his claim, as required by the governing statute. (Motion, Doc. 5) For the following reasons, the Court concludes that Petitioners did file within the permissible time period, warranting denial of the Motion.

### I. Jurisdictional Facts and Procedural History

In November 2018, Torres worked as a crewman aboard the Vessel, which Brava Cruz owned.[1] (*Id.* at 2) Torres alleges that during the voyage, a venomous stingray fell from a shrimping net and stung his left ring finger. (*Id.*) When his injury worsened, the Vessel's Captain asked Zimco "for permission to return to shore to seek medical treatment for Mr. Torres", but Zimco instructed the Captain to keep the Vessel out at sea. (*Id.*) On December 4, the Vessel returned to shore and Torres filled out an incident report at the Zimco and Texgulmarco offices. (*Id.* at 2–3) That same day, Torres "was admitted to the Emergency Room

---

[1] Torres claims that Zimco or Texgulmarco employed him at the time, although these companies deny it. (*See* Zimco & Texgulmarco Response, Doc. 10, 1–2) For purposes of the Motion, the Court need not resolve this factual dispute.

. . . to undergo amputation of his injured finger", although ultimately, medical providers only removed a portion of his finger. (Torres Reply, Doc. 13, 1)

On December 27, Torres's counsel delivered a letter to Harley Londrie, the registered agent for all three Petitioners. (Motion. Doc. 5, 3) The correspondence identified Torres as the "Client" and provided the correct accident date—*i.e.*, November 1, 2018. (Dec. 2018 Letter, Doc. 5-1, 2) As resolution of the pending Motion turns largely on the content of this letter, the Court provides the entirety of the document:

> Please be advised that this law firm has been employed by the referenced person [Torres] to represent his claim against you or your insurance carrier, if any, arising from an accident that occurred on the captioned date.
>
> The State of Texas requires all businesses to have liability insurance. A Texas liability insurance policy provides that you must send to your insurance adjuster a copy of every demand you receive from us, as well as, all citations, subpoenas and other legal notices. Otherwise, such policy will be void and of no force and effect. Please forward this letter to your insurance agent who wrote the policy or your insurance adjuster, if you have one.
>
> If you do not have liability insurance, please contact me at this office in order to discuss a settlement of the case with you. Please respond upon receipt of this letter so that we may avoid having to take legal action against you.

(*Id.*)

After receiving the letter from Torres's counsel, Londrie, as manager and records custodian for Brava Cruz, conducted an investigation. He "reviewed documents in the file for [the referenced] fishing trip" and reached several conclusions, including, as examples:

- "[U]pon returning to port on December 4, 2018, Mr. Torres reported a bad infection on one of his fingers;"
- Torres told the Captain of the vessel and "another witness" that "the infection was not related to his work on the vessel;" and
- "[D]espite denying being injured while working on as a header, Mr. Torres was instructed to immediately see a doctor".

(Londrie Affidavit, Doc. 11-6, 1–2) Based on his 47 years of experience and the investigation, Londrie concluded that it was not "reasonably possible that Mr. Torres' injuries would cost more

than $150.000.00 to treat" and that he "could not imagine that the removal and treatment to the tip of a single finger would cost anywhere near that amount." (*Id.* at 2)

In mid January 2019, a phone call occurred between Zachary Zapata (Torres's attorney) and Brava Cruz's attorney, David Willis. (Motion, Doc. 5, 3) The parties dispute the substance of that call. Zapata claims he received an "unsolicited call" from Willis, and that during the phone call, Willis acknowledged the severity of Torres's injury and that Torres's claim would likely exceed the value of the Vessel. (Zapata Affidavit, Doc. 5-2, 2) Willis denies making such statements and claims that during the call, he minimized the nature of Torres's injury and even called into question whether Torres injured himself in the course and scope of his employment. (Willis Affidavit, Doc. 11-1, 2)

On August 1, 2019, Torres sent a demand letter to Zimco, detailing the facts of the case and the claims involved, and providing an itemized list of medical expenses totaling $220,407.90. (Aug. 2019 Letter, Doc. 5-4, 5) He proposed to settle the matter for $1,750,000.00. (*Id.*) In the letter, Torres did not mention Brava Cruz or Texgulmarco. (*Id.* at 2–4)

On October 11, Torres filed a Jones Act claim against all three companies in a Texas state court. (Motion, Doc. 5, 3; State Ct. Petition, Doc. 5-5, 2)

In January 2020, Brava Cruz, Zimco, and Texgulmarco filed the instant action, seeking to limit their liability to $209,312, the sum of the fair market value of the Vessel ($150,000) and its pending freight at the conclusion of the voyage ($59,312). (Complaint, Doc. 1)

II. **Analysis**

Torres moves to dismiss this action for lack of subject matter jurisdiction, alleging that Petitioners failed to timely file their Complaint within the six-month period required by the Limitation Act. (Motion, Doc. 5) Torres argues that "[a]t the very least, Complainant's proverbial 6-month clock began ticking on January 15, 2019 when [Brava Cruz's attorney] acknowledged that litigation may ensue pursuant to [the December 2018 letter]". (*Id.* at 5)

Petitioners disagree that either the December 2018 letter or the January 15 phone conversation provided sufficient written notice under the Limitation Act. Zimco and Brava Cruz argue that written notice did not occur until the August 2019 demand letter. (Zimco & Texgulmarco Response, Doc. 10, 8–10; Brava Cruz Response, Doc. 11, 9) Texgulmarco maintains that only the state court lawsuit, in October 2019, satisfied the statutory requirement. (Zimco & Texgulmarco Response, Doc. 10, 11–12)

**A. Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(1), a trial court must dismiss an action for lack of subject matter jurisdiction when the Court is without the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party seeking the federal forum bears the burden of proving federal jurisdiction. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). In the context of a limitation action, a court lacks subject matter jurisdiction if the petitioner fails to initiate the suit within the statutorily-prescribed time period. *Complaint of Tom-Mac, Inc.*, 76 F.3d 678, 682 (5th Cir. 1996); *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 315 (5th Cir. 2012).

"When a party challenges subject matter jurisdiction, the court is given the authority to resolve factual disputes, along with the discretion to devise a method for making a determination with regard to the jurisdictional issue." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994); *see also Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 423 (5th Cir. 2013) ("[A] district court [is] not bound by the pleadings in order to decide the Rule 12(b)(1) motion . . . ; rather, it [is] empowered to make factual findings that [are] determinative of jurisdiction." (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). "The court's authority to consider evidence presented beyond the pleadings allows it to . . . [consider]" affidavits, further discovery, or oral testimony. *Moran*, 27 F.3d at 172. When a

movant makes a factual attack, the nonmovant must establish subject matter jurisdiction by a preponderance of the evidence. *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1992).

### B. Written Notice under the Limitation of Liability Act

The Limitation Act "allows a vessel owner to limit liability for damage or injury . . . to the value of the vessel or the owner's interest in the vessel." *In re The Complaint of RLB Contracting, Inc., as Owner of the Dredge Jonathan King Boyd its Engine, Tackle, Gear for Exoneration or Limitation of Liab.*, 773 F.3d 596, 602 (5th Cir. 2014) [hereinafter *RLB Contracting*] (quoting *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001)) (internal quotation marks omitted). "A limitation action essentially establishes a limited fund equal to the value of the vessel and consolidates all potential claims before one federal district court." *Id.* at 602 n.12 (citing *Lewis*, 531 U.S. at 448). "To invoke the protections of the Act, the vessel owner must bring an action in district court 'within 6 months after a claimant gives the owner written notice of a claim.'" *Id.* at 602 (holding that "a written communication may serve as notice under the Act in lieu of a filed complaint") (quoting 46 U.S.C. § 30511(a) (2012)). "This requirement is jurisdictional." *Id.* (citing *In re Eckstein*, 672 F.3d at 315).

Under the Limitation Act, "a communication qualifies as written notice if it reveals a reasonable possibility that the claim will exceed the value of the vessel." *Id.* (quoting *Eckstein*, 672 F.3d at 317) (internal quotation marks omitted). "This standard evokes two inquiries: (1) whether the writing communicates the *reasonable possibility* of a claim, and (2) whether it communicates the *reasonable possibility* of damages in excess of the vessel's value." *Id.* (emphasis in original). "Answering these questions requires a 'fact-intensive inquiry into the circumstances of the case.'" *Id.* (quoting *In re Eckstein*, 672 F.3d at 317). "[T]he standard is a reasonable *possibility*, not a reasonable *probability*", and is a standard that is neither "toothless" nor "particularly stringent." *Id.* (quoting *Eckstein*, 672 F.3d at 317) (emphasis in original).

5 / 11

"Once a reasonable possibility has been raised, it becomes the vessel owner's responsibility to initiate a prompt investigation and determine whether to file a limitation action." *Id.* (quoting *Eckstein*, 672 F.3d at 317) (internal quotation marks omitted). In essence, the "reasonable possibility" standard places the burden of investigating potential claims on the vessel owner. *Id.*

Petitioners argue that the required written notice must include at least the following four components: (1) the claimant's intention to seek damages from the vessel owner; (2) details of the incident; (3) details as to why the vessel owner is at fault; and (4) a "statement that the claim may exceed the value of the vessel". (Zimco & Texgulmarco Response, Doc. 10, ¶ 4.6; Brava Cruz Response, Doc. 11, 3 (citing *Billiot v. Dolphin Servs., Inc.*, 225 F.3d 515 (5th Cir. 2000); *Complaint of Tom-Mac, Inc.*, 76 F.3d 678 (5th Cir. 1996))). But the Fifth Circuit has rejected such a "bright line" rule that mandates "magic words" or a "clear list of required statements and demands". *RLB Contracting*, 773 F.3d at 605; *see also In re Brown*, 766 F. App'x 30, 33 (5th Cir. 2019). Instead, courts apply "a broad and flexible standard of review—reading letters of notice in their entirety and considering their 'whole tenor'" to determine whether the written notice reveals a reasonable possibility that a claim exists that will exceed the value of the vessel. *RLB Contracting*, 773 F.3d at 605 (quoting *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994)). Even the decisions that Petitioners cite reaffirm this general test. *See Billiot*, 225 F.3d at 517; *Complaint of Tom-Mac*, 76 F.3d at 683. Accordingly, the Court declines to apply the more exacting standard that Petitioners urge.

### 1. Reasonable Possibility of a Claim

The initial inquiry focuses on whether the written notice provided a "'reasonable possibility' that a claim *exists* . . . ." *RLB Contracting*, 773 F.3d at 604 (emphasis in original).

The Court finds that Torres's December 2018 letter notified Petitioners of the reasonable possibility of a claim against Petitioners. The letter explicitly references Torres by name and states that he had hired an attorney to "represent his claim" related to the "accident" on

6 / 11

November 19, 2018.  Torres's counsel asked Londrie to forward the correspondence to the insurance agent or, if no insurance policy existed, to contact him to "discuss a settlement of the case with you".  The letter ended by warning Londrie that failure to respond to the letter could lead to "legal action".  The letter was addressed to Londrie, who is the manager of Brava Cruz, the corporation that owns the Vessel.[2]  (*See* Brava Cruz Response, Doc. 11, 5)  Read as a whole, the letter sufficiently notified Petitioners of a possible lawsuit against them related to an accident involving Abelardo Torres on November 19, 2018.  In doing so, the letter satisfied the first requirement for a written notice under the Limitation Act.

### 2. Reasonable Possibility of a Claim Exceeding the Vessel's Value

"Whether a written notice reveals a 'reasonable possibility' that a claim will exceed the value of the vessel requires the court to engage in a fact-intensive inquiry into the circumstances of the case." *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 317 (5th Cir. 2012).  The standard is not particularly onerous.  The written notice need not specify the alleged damages or even specifically allege that such damages will exceed the value of the vessel.  *Id*. at 319.  And the injured individual can provide the written notice "before the full extent and permanence of [the claimant's] injuries [are] definitively known."  *Id*. at 317.  "When there is uncertainty as to whether a claim will exceed the vessel's value, the reasonable possibility standard places the risk and the burdens associated with that risk on the owner."  *Id*. at 318.  Even if a "doubt exists as to the total amount of the claims or as to whether [the claims] will exceed the value of the ship[,] the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain."  *Id*. (quoting *Complaint of Morania Barge* No. 190, Inc., 690 F.2d 32, 34 (2d Cir. 1982)).

---

[2] To the extent that Petitioners dispute that delivery of the December 2018 letter on Londrie constituted service of the letter on them, the Court rejects this argument.  It is undisputed that Londrie is the manager of Brava Cruz, and the relevant "Texas Franchise Tax Public Information Report" reflects that he serves as President for the company.  (*See* Doc. 13-6, 2)  At the time, Londrie also served as President of Zimco (Doc. 13-7, 2) and as Vice President of Texgulmarco. (Doc. 13-8, 2).  The Court finds that Londrie was an agent for each Petitioner and that service of the December 2018 letter on Londrie represented service of the document on all three entities.  *See Doxsee*, 13 F.3d at 553 ("It is settled that a notice of claim may be received by an agent of the vessel owner." (citing *Diamond v. Beutel*, 247 F.2d 604, 607 (5th Cir. 1957)).

At the same time, the written notice must itself contain sufficient information to reveal the reasonable possibility that the claim will exceed the value of the vessel.  "The Limitation Act's six-month timeline does not automatically begin to run when a vessel owner learns a claimant has filed a lawsuit[;] [i]t is triggered only if and when the written notice reveals a 'reasonable possibility' that the claim will exceed the value of the  vessel".  *In re Eckstein*, 672 F.3d at 317; *see also Orion Marine Construction, Inc. v. Carroll*, 918 F.3d 1323, 1337 (11th Cir. 2019) ("[W]hile it's true that the vessel owner bears the burden of 'uncertainty' and 'doubt' as to the amount of alleged damages, it remains the case that the claimant's notice must reveal a reasonable possibility that the claims may exceed the offending vessel's value.  It is at that point—but not before—that the shipowner's duty to investigate arises.") (citing *In re Eckstein*, 672 F.3d at 317; *RLB Contracting*, 773 F.3d at 603).  For example, the written notice can satisfy the standard by describing the nature of the injuries or property damage stemming from the accident.  *See In re Eckstein*, 672 F.3d at 314 (finding the standard met when the written notice referred to damages for "past loss of earning, future loss of earning capacity, past and future disability, past and future disfigurement, past and future medical and hospital expenses, past and future pain and mental anguish, and maintenance and care"); *In re Brown*, 766 F. App'x at 33–34 (involving a communication that described damages to the claimant's "pier and pilings" and attached a photograph of the accident site); *In re Marquette Transp. Co., L.L.C.,* 524 F. App'x 989, 992 (5th Cir. 2013) (finding the requirement satisfied when the written notice included the cost of repairs from the accident and stated that the claimant suffered "an enormous financial burden").

In the present matter, Torres's December 2018 Letter fails to satisfy the applicable standard.  While the letter references "an accident" and "legal action", it does little else.  The document is silent as to the nature of the alleged injury or damages.  Accepting Torres's position would require the conclusion that any letter threatening a lawsuit but providing no information beyond the claimant's name and accident date would automatically place the vessel owner on

notice that a claim existed that could reasonably exceed the value of the vessel. The law, while not stringent, requires more. Indeed, Torres's argument would render the second element of the applicable test irrelevant, as any communication that revealed a reasonable possibility of a claim would automatically satisfy the second prong as well.

Torres also requests that the Court consider evidence outside of the December 2018 letter. First, in his Motion, Torres argues that Petitioners "were aware of the extent of Mr. Torres' injuries while he was still at sea and when he first came to shore on December 4, 2018." (Motion, Doc. 5, 5) And in his Reply, he attaches an alleged picture of his injured finger, as well as hospital records referencing that he "might lose that finger." (Photograph, Doc. 13-1; Hosp. Rec., Doc. 13-10) But Torres provides no evidence regarding what Petitioners allegedly knew through December 4. And he does not claim that he ever provided the photographs or hospital records to any Petitioner. Instead, Torres asks that the Court consider such information, even though not provided to Petitioners, to cure the deficiencies of the December 2018 letter. The law does not support such an approach. Rather, courts determining whether a claimant gave written notice have invariably focused on the writings that the claimant delivered to the vessel owner, whether those documents came in the form of pleadings from a filed lawsuit, letters, emails, attached photographs, or other similar communications. *See, e.g., RLB Contracting*, 773 F.3d at 605 (analyzing the content of emails between the parties); *In re Brown*, 766 Fed. Appx. at 33–34 (considering a letter and attached photograph); *In re Eckstein*, 672 F.3d at 317 (determining whether a state-court petition contained sufficient information); *In re Marquette*, F. App'x at 990 (involving a letter that requested reimbursement for specified repairs). The claimant can even satisfy the requirement through multiple writings to the vessel owner. *See, e.g., RLB Contracting*, 773 F.3d at 604 (considering "an entire series of letters"). Torres provides no authority, however, for the proposition that a court can consider written information never provided to the vessel owner. In the present case, the only written communication from Torres to Petitioners in late 2018 is the December 2018 letter, and that

document includes no information regarding the alleged injuries, the nature of the accident, or any other detail that would enable Petitioners to form any understanding regarding the alleged value of the claim.  As a result, the letter in itself reveals nothing about the potential claim's value, much less reveals a reasonable possibility that any such claim could exceed the value of the Vessel.

Torres also places great reliance on the January 2019 phone call between his counsel and Brava Cruz's lawyer.  In that phone call, according to Torres, Brava Cruz's attorney expressly acknowledged that the injuries would exceed the value of the Vessel. (Motion, Doc. 5, 5)  While Torres concedes that the telephone call cannot represent the written notice itself, he nevertheless argues that the alleged statements by Brava Cruz's attorney "evidence[] that the December 27, 2018 letter" warned Brava Cruz that the claim could exceed the value of the vessel. (Reply, Doc. 13, 12)  Again, Torres's argument fails because it turns on information beyond the written communication to Brava Cruz.  An alleged verbal statement cannot cure deficiencies in a written notice offered to satisfy the Limitation Act.  Such a rule would negate the benefits of the "written notice" requirement, as any party could deliver a generic form letter about a potential "lawsuit" and then claim that the recipient later verbally acknowledged that it understood that the claim could exceed the value of the vessel.  The Limitation Act's requirement for a *written* notice is meant to avoid precisely this type of dispute.

Finally, Torres argues that the December 2018 letter sufficed because "[t]he high cost of medical treatment is common knowledge". (Reply, Doc. 13, 11 (quoting decisions from the Supreme Court of Texas))  But even if this statement is true, the December 2018 letter failed to reference *any* alleged medical treatment or even an injury.  A letter's mere reference to "an accident" and a "lawsuit" do not automatically place a vessel owner on notice that the accident involved personal injuries that required significant medical treatment.  And even if the Court accepted that Petitioners knew that Torres had suffered an undefined injury to his finger, such a

finding would not necessarily mean that the medical treatment could support a claim that exceeded the value of the Vessel.

The Court concludes that Torres's December 2018 letter, on its own, failed to reveal a reasonable possibility that Torres's claim would exceed the value of the Vessel. Torres's efforts to cure the deficiencies in the letter through evidence beyond the scope of that document fail.

### III. Conclusion

After the December 2018 letter, the next written notice that Torres sent to at least one of the Petitioners occurred on August 1, 2019. (Aug. 2019 Letter, Doc. 5-4) Zimco and Brava Cruz concede that this demand letter provided sufficient written notice, although Texgulmarco contests as much. (Zimco & Texgulmarco Response, Doc. 10, 11–12) But as all three Petitioners filed the instant action within six months of the August 2019 letter, the Court need not resolve whether the document represented written notice for Texgulmarco. Written notice occurred no earlier than August 1, 2019 and, based on that date, Petitioners timely filed this lawsuit.

For these reasons, it is:

**ORDERED** that Claimant Abelardo Torres's Opposed Motion to Dismiss Under Rule 12(b): Lack of Subject Matter Jurisdiction for Failure to Timely Commence Limitation Proceedings (Doc. 5) is **DENIED**;

**ORDERED** that Claimants' Opposed Motion for Leave (Doc. 15) to file his Reply six days late due to complications occasioned by the COVID-19 pandemic is **GRANTED**; and

**ORDERED** that Claimants' Opposed Motion for Leave to File Sur-Reply (Doc. 17) is **GRANTED**.[3]

SIGNED this 27th day of July, 2020.

*Fernando Rodriguez, Jr.*
Fernando Rodriguez, Jr.
United States District Judge

---

[3] Although the Court accepts Torres's Sur-Reply so that the record contains the additional briefing, the Court would have reached the same conclusion absent the acceptance of the Sur-Reply.